IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 06 2026

TAMMY H. DOWNS, CLERK
By: _____ DEP CLERK

| | |
|---|---|
| ZP NO. 332, LLC, | |
| *Plaintiff*, | |
| v. | Case No. 4:26CV134-KGB |
| LIBERTY SURPLUS INSURANCE CORPORATION and ASPEN AMERICAN INSURANCE COMPANY, | JURY TRIAL DEMANDED |
| *Defendants*. | |

## COMPLAINT

COMES NOW, Plaintiff, ZP NO. 332 LLC ("ZP"), hereby files this complaint and demand for jury trial against Defendants, LIBERTY SURPLUS INSURANCE CORPORATION ("Liberty") and ASPEN AMERICAN INSURANCE COMPANY ("Aspen"), for breach of contract and declaratory relief and damages, as follows:

### JURISDICTION AND VENUE

1. This is an action for breach of contract and declaratory relief and damages under 28 U.S.C. §§ 2201 and 2202, against Liberty, as issuer of a series of primary commercial general liability policies to Huffman Contractors, Inc. ("Huffman"), and Aspen, as issuer of a series of excess commercial general liability policies to Huffman, for Liberty and Aspen's refusal to satisfy their payment obligations under their insurance policies, including its obligation to satisfy the January 26, 2026 judgment entered in favor of ZP and against Huffman in the matter styled *ZP No. 332 LLC v. Huffman Contractors, Inc.*, Case No. 2:24-cv-611-JKW-DEM in the United States District Court for the Eastern District of Virginia (the "Underlying Action").

This case assigned to District Judge Baker
and to Magistrate Judge Harris

2. ZP is a limited liability company organized and existing under the laws of the State of Virginia with its principal place of business in Wilmington, North Carolina. Plaintiff's members include Ocean Park Properties, LLC and eight trusts (collectively, the "Zimmer Family Trusts"), including (1) the William R. Zimmer Children's GST Irrevocable Trust One f/b/o Jeffrey L. Zimmer; (2) William R. Zimmer Children's GST Irrevocable Trust Two f/b/o Herbert J. Zimmer; (3) William R. Zimmer Children's GST Irrevocable Trust Three f/b/o Alan M. Zimmer; (4) William R. Zimmer Children's GST Irrevocable Trust Four f/b/o Arlene Z. Schreiber; (5) Jeffrey L. Zimmer Revocable Trust u/a/d 10/09/2023; (6) Herbert J. Zimmer Children's GST Investment Trust u/a/d 06/30/1997; (7) Alan M. Zimmer Children's GST Investment Trust u/a/d 06/30/1997; and (8) Arelene Z. Schreiber Children's GST Investment Trust u/a/d 06/30/1997. Ocean Park Properties, LLC is a limited liability company owned by Heather Loesch, a citizen and resident of New Hanover County, North Carolina. The Zimmer Family Trusts are North Carolina trusts whose trustees are all residents and citizens of North Carolina. ZP is a citizen of North Carolina for purposes of diversity jurisdiction.

3. Upon information and belief, and at all times relevant hereto, Liberty is and was a Massachusetts company with its principal place of business in Boston, Massachusetts, and is and was authorized to conduct the business of insurance in the state of Arkansas, including the issuance of the Liberty Policies to Huffman, an Arkansas corporation with its principal place of business in Little Rock, Arkansas, in Arkansas. At all times relevant hereto, the Liberty Policies afforded primary Commercial General Liability ("CGL") coverage to Huffman through a series of consecutive primary insurance policies for the May 1, 2020 – May 1, 2024 policy periods.

4. Upon information and belief, and at all times relevant hereto, Aspen is and was a Texas company with its principal place of business in Austin, Texas, and Aspen is and was

authorized to conduct the business of insurance in the state of Arkansas, including the issuance of the Aspen Policies to Huffman, an Arkansas corporation with its principal place of business in Little Rock, Arkansas, in Arkansas. At all times relevant hereto, the Aspen Policies afforded excess Commercial General Liability ("CGL") coverage to Huffman through a series of consecutive excess insurance policies for the May 1, 2020 to May 1, 2024 policy periods.

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a), as the parties' respective states of incorporation and principal places of business are diverse, thus establishing diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest, fees and costs.

6. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because the insurance policies described below were all issued for delivery and delivered to Liberty and Aspen's insured in this District, the causes of action set forth in this action accrued in this District, and Liberty and Aspen regularly conduct business in this District.

**UNDERLYING FACTS**

**ZP, Huffman, and the Oasis Project**

7. ZP is the owner and developer of a multifamily apartment complex known as The Port at East Beach (formerly known as The Oasis Apartments and Yacht Club) located at 4621A & 462113 Pretty Lake Avenue, Norfolk, Virginia 23518 (the "Property," the "Project" or the "Oasis Project").

8. In April 2021, ZP entered into a contract (the "Construction Contract") with Huffman for Huffman to serve as the general contractor on the Oasis Project. A true and correct copy of the Construction Contract is attached as **Exhibit A**.

9. The Oasis Project consists of two residential apartment buildings totaling 146 residential units, a pre-cast concrete parking garage, leasing office, fitness center, and additional common areas and amenities.

10. Under the Construction Contract, Huffman agreed to "be responsible to [ZP] for the acts and omissions of [Huffman's] employees, Subcontractors, and their agents and employees, and other persons performing or supplying any of the labor, materials or services constituting the Work under this Contract. **Ex A** at Section 4.2.2.

11. On or around April 8, 2021, Huffman began construction work on the Project.

12. The Construction Contract required Huffman to substantially complete the Project free of defects, deficiencies, and damages, and to obtain a Temporary Certificate of Occupancy or a Certificate of Occupancy for the Project (whichever allowed for full occupancy), by December 6, 2022. **Ex. A** at Exhibit J.

13. The Construction Contract also required Huffman to indemnify ZP for losses, including attorneys' fees, arising out of or resulting from Huffman (or its subcontractors') performance of the work on the Project:

> 4.15.1 **Indemnity by Contractor**. To the fullest extent permitted by the law, the Contractor shall indemnify, reimburse, hold harmless, and defend the Owner [ZP] and its lender … and all of their agents, employees, consultants, parent, subsidiaries, related or affiliated entities, successors and assigns (together the "Indemnitees") from and against claims, damages, losses and expenses, including but not limited to, attorneys' fees (collectively, a "Loss"), arising out of or resulting from performance of the Work, but only to the extent caused in whole or in part by negligent acts or omissions of the Contractor, a Subcontractor, a Sub-Subcontractor, a material or equipment supplier, or anyone directly or indirectly employed by them or anyone for whose acts they may be liable…."

14. Huffman's work on the Oasis Project was delayed, deficient, and defective, resulting in "property damage" as defined by the Liberty Policies and Aspen Policies.

- 5 -

15. The entirety of Huffman's delayed and defective work was performed on Huffman's behalf by Huffman's subcontractors.

16. Huffman's delayed, deficient and defective work on the Project caused physical injury and damage to ZP's Property and caused ZP loss of the ability to rent or otherwise use the Property until January 17, 2025 (collectively, ZP's "Damages").

**The Underlying Action and Resulting Verdict and Judgment**

17. ZP sued Huffman to recover its Damages, interest, and attorneys' fees and costs in the Underlying Action.

18. ZP also sued Huffman's surety, Travelers, who countersued ZP seeking to recover millions of dollars that Travelers paid to repair Huffman's work and resulting damage to the Property.

19. On December 15, 2025, a jury awarded ZP $9,137,000 in Damages proximately caused by Huffman's delayed and defective work and resulting "property damage" as defined by the Liberty Policies and Aspen Policies (the "Verdict"). A true and correct copy of the December 15, 2025 Verdict is attached as **Exhibit B**.

20. On January 26, 2026, the court in the Underlying Action entered Judgment in favor of ZP and against Huffman in the amount of $9,137,000, plus post-judgment interest accruing at the statutory interest rate (6%) as of December 15, 2025 (the "Judgment"). A copy of the January 26, 2026 Judgment is attached as **Exhibit C**.

21. As of the date of this filing, issues relating to ZP's entitlement to and the amount of pre-judgment interest and contractual attorneys' fees as a result of the Verdict and resulting Judgment remain outstanding in the Underlying Lawsuit.

22. As of the date of this filing, ZP's covered losses under the Liberty and Aspen Policies, including the Judgment against Huffman, remain entirely unpaid. Despite demands from ZP, Liberty and Aspen have denied coverage and refused to pay for the loss ("property damage") sustained by ZP and which now has been awarded to ZP by virtue of the Verdict and Judgment, and, further, dispute the existent and extent of coverage afforded by the Liberty Policies and Aspen Policies for the Judgment, as well as any pre-judgment interest or attorneys' fees which may later be added to the Judgment. True and correct copies of Liberty's coverage correspondence are attached as **Composite Exhibit D**. True and correct copies of Aspen's coverage correspondence are attached as **Composite Exhibit E**.

### The Liberty Policies

23. Liberty issued the following series of CGL policies (each individually, a "Liberty Policy" and collectively, the "Liberty Policies") to Huffman as a Named Insured:

  i. Policy No. 1000410797-01, effective 5/1/2020-5/1/2021 ("the 2020-21 Liberty Policy") (a true and correct copy attached as **Exhibit F**);

  ii. Policy No. 1000410797-02, effective 5/1/2021-5/1/2022 (the "2021-22 Liberty Policy") (a true and correct copy attached as **Exhibit G**);

  iii. Policy No. 1000410797-03, effective 5/1/2022-5/1/2023 (the "2022-23 Liberty Policy") (a true and correct copy attached as **Exhibit H**);

  iv. Policy No. 1000410797-04, effective 5/1/2023-5/1/2024 (the "2023-24 Liberty Policy") (a true and correct copy attached as **Exhibit I**).

24. ZP is also an "additional insured" under the Liberty Policies.

25. The Liberty Policies require Liberty to "pay those sums that the insured becomes legally obligated to pay as damages because of … '**property damage**'" when the "'**property damage**' occurs during the policy period" and "is caused by an '**occurrence**'."

26. The Liberty Policies also require Liberty to defend its insureds (including Huffman and ZP) against any "**suit**" (including the Underlying Action) as that term is defined by the Liberty Policy.

27. The Liberty Policies also required Liberty to defend ZP against Travelers' counterclaim to recover amounts Travelers paid to repair the "**property damage**" caused by Huffman's work on the Project (" Travelers' Counterclaim"), as ZP is an indemnitee of Huffman's under the Construction Contract, which is an "**insured contract**" as that term is defined in the Liberty Policies and all other conditions to such defense had and have been satisfied.

28. The Liberty Policies define "**property damage**" to mean: (a) "[p]hysical injury to tangible property, including all resulting use of that property" or (b) "[l]oss of use of tangible property that is not physically injured."

29. The Liberty Policies define "**occurrence**" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

30. By Arkansas statute (A.C.A. 23-79-155), the term "**occurrence**" also means "property damage … resulting from faulty workmanship."

31. Each of the Liberty Policies have an "each occurrence" policy limit of $1,000,000, a "products-completed operations" limit, and a general aggregate limit of $2,000,000 per-project.

**The Aspen Policies**

32. Aspen issued the following series of excess CGL policies (each individually, an "Aspen Policy" and collectively, the "Aspen Policies") to Huffman as a Named Insured and ZP as an additional insured:

　　i. Policy No. CX00CEV20, effective 5/1/2020-5/1/2021 (the "2020-21 Aspen Policy") (a true and correct copy is attached as **Exhibit J**);

　　ii. Policy No. CX00CEV21, effective 5/1/2021-5/1/2022 (the "2021-2022 Aspen Policy") (a true and correct copy is attached as **Exhibit K**);

　　iii. Policy No. CX00CEV22, effective 5/1/2022-5/1/2023 (the "2022-2023 Aspen Policy") (a true and correct copy is attached as **Exhibit L**); and

　　iv. Policy No. CX00CEV23, effective 5/1/2023-5/1/2024 (the "2023-2024 Aspen Policy") (a true and correct copy is attached as **Exhibit M**).

33. ZP is also an "additional insured" under the Aspen Policies.

34. The Aspen Policies require Aspen to "pay on behalf of the insured '**loss**' resulting from an occurrence during the 'policy period' … in excess of the Underlying [Liberty Policy]."

35. Each of the Aspen Policies define "**loss**" to mean "those sums paid to settle a claim or suit, or satisfy a judgment, for which the insured is legally liable and for which such amounts are covered by the [Liberty Policy]" underlying the particular Aspen Policy in a given policy period.

36. The Aspen Policies "follow form" to the Liberty Policies, and are therefore subject to the same definitions, terms, conditions, and exclusions of the underlying Liberty Policy for each policy period unless the Aspen Policies expressly replace, modify, or otherwise differentiate such definition, term, condition, or exclusion.

37. Under the Aspen Policies, by incorporation of the language of the Liberty Policies, Aspen is obligated to "pay those sums that [Huffman] becomes legally obligated to pay as damages because of … '**property damage**'" when the "'**property damage**' occurs during the policy period" and "is caused by an '**occurrence**'."

38. Under the Aspen Policies, by incorporation of the language of the Liberty Policies, "**property damage**" means: (a) "[p]hysical injury to tangible property, including all resulting use of that property" or (b) "[l]oss of use of tangible property that is not physically injured."

39. Under the Aspen Policies, by incorporation of the language of the Liberty Policies, "**occurrence**" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

40. By Arkansas statute (A.C.A. 23-79-155), the term "**occurrence**" also means "property damage … resulting from faulty workmanship" under the Aspen Policies.

41. Each of the Aspen Policies are subject to a $10,000,000 per-"occurrence" limit and a $10,000,000 general aggregate limit.

42. ZP's claims for damages against Huffman relating to Huffman's work on the Project (which was performed by its subcontractors) and the resulting Verdict and Judgment consist of "property damage" that was caused by one or more than one "occurrence" as those terms are defined in the Liberty Policies, and are therefore covered under the Liberty Policies.

43. The "property damage" suffered by ZP, including ZP's loss of use of the Property, as well as the "occurrence(s)" that caused ZP's loss of use, occurred during the policy periods of the Liberty Policies and Aspen Policies.

44. ZP's claims for damages against Huffman relating to Huffman's work on the Project (which was performed by its subcontractors) and the resulting Verdict and Judgment

consist of "loss" (as defined by the Aspen Policies) resulting from one or more than one occurrence during the policy period and which is covered by and in excess of the limits of the applicable Liberty Policies, and is therefore covered under the Aspen Policies.

45. All conditions precedent to this action have been performed, waived, or are the subject of an estoppel.

46. All conditions precedent to coverage under the Liberty Policies have been performed, waived, or are the subject of an estoppel.

47. All conditions precedent to coverage under the Aspen Policies have been performed, waived, or are the subject of an estoppel.

48. As a result of Defendants' refusal to accept ZP's demand and honor their contractual obligations under their insurance policies, ZP has engaged counsel to represent its interests in this action and is obligated to pay counsel a reasonable fee.

49. Matters relating to the interpretation of the Liberty Policies and Aspen Policies and ZP's ability to shift attorneys' fees and costs are governed by Arkansas law.

## COUNT I – BREACH OF CONTRACT (LIBERTY)

50. ZP re-alleges paragraphs 1 through 49.

51. The Liberty Policies constitute valid, binding and enforceable contracts between ZP and Liberty.

52. The Liberty Policies were in full force and effect at all relevant times.

53. The Liberty Policies require Liberty to pay on the insureds' behalf those sums that Huffman becomes legally obligated to pay as damages because of "property damage" occurring during the policy period and caused by an "occurrence" as those terms are defined by the Liberty Policies.

54. The amounts awarded to ZP in the Verdict and resulting Judgment in the Underlying Lawsuit (including if/as modified to include pre-judgment interest and/or attorneys' fees) constitute sums for which Huffman is legally obligated to pay as damages because "property damage" caused by one or more than one "occurrence," all of which occurred during the policy period(s) of the Liberty Policies.

55. The $9,137,000 in "property damage" for which Huffman was found liable to ZP in the Verdict and Judgment is covered under the Liberty Policies.

56. By failing to pay the full amount of Huffman's covered liability to ZP resulting from the Judgment, Liberty is in breach of the Liberty Policies.

57. Travelers' claims against ZP in the Underlying Lawsuit sought damages because of "property damage" to which the Liberty Policies apply, and therefore also triggered Liberty's "right and duty to defend" ZP against Travelers' Counterclaim, the cost of which is owed by Liberty outside of and in addition to its policy limits.

58. Liberty breached the Liberty Policies by failing to defend ZP against Travelers' Counterclaim in the Underlying Action.

59. As a result of Liberty's breaches of contract, ZP has sustained substantial damages and will continue to sustain substantial damages, interest, and the attorneys' fees and costs ZP has incurred and will incur arising out of Liberty's denial and associated with this action.

**WHEREFORE**, in consideration of the foregoing, ZP hereby respectfully requests the entry of a judgment in its favor and against Liberty in the full amount of the Judgment (along with all accrued interest), the attorney's fees and costs ZP incurred defending against Travelers' Counterclaim, and all actual and consequential damages naturally flowing from Liberty's breach, together with an award of pre- and post-judgment interest, attorneys' fees and costs incurred in

this action that are available in equity or at law, including but not limited to those available under Arkansas Code Sections 16-22-308, 23-79-208, and/or, 23-79-209, and such other and further relief as may be equitable, just, and proper.

## COUNT II – BREACH OF CONTRACT (ASPEN)

60. ZP re-alleges paragraphs 1 through 49.

61. The Aspen Policies constitute valid, binding and enforceable contracts between ZP and Aspen.

62. The Aspen Policies were in full force and effect at all relevant times.

63. The Aspen Policies require Aspen to pay on Huffman's behalf "loss" that Huffman becomes legally obligated to pay, including Huffman's liability to ZP for damages because of "property damage" occurring during the policy period and caused by an "occurrence" as those terms are defined by the Liberty (and therefore Aspen) Policies.

64. The amounts awarded to ZP in the Verdict and resulting Judgment in the Underlying Lawsuit (including if/as modified to include pre-judgment interest and/or attorneys' fees) constitute "loss" as sums for which Huffman is legally obligated to pay as damages because "property damage" caused by an "occurrence," all of which occurred during the policy period(s) of the Aspen Policies.

65. The $9,137,000 in "property damage" for which Huffman was found liable to ZP in the Verdict and Judgment in excess of the limit(s) of the applicable Liberty Policy(ies) is covered under the Aspen Policies.

66. By failing to pay the full amount of Huffman's covered liability resulting from the Judgment in excess of the limit(s) of the Liberty Policy(ies), Aspen is in breach of the Aspen Policies.

67. As a result of Aspen's breaches of contract, ZP has sustained substantial damages and will continue to sustain substantial damages, interest, and the attorneys' fees and costs ZP has incurred and will incur arising out of Aspen's denial and associated with this action.

**WHEREFORE**, in consideration of the foregoing, ZP hereby respectfully requests the entry of a judgment in its favor and against Aspen in the full amount of the Judgment and all actual and consequential damages naturally flowing from Aspen's breach, together with an award of pre- and post-judgment interest, attorneys' fees and costs incurred in this action that are available in equity or at law, including but not limited to those available under Arkansas Code Sections 16-22-308, 23-79-208, and/or 23-79-209, and such other and further relief as may be equitable, just, and proper.

## COUNT III – DECLARATORY RELIEF AND DAMAGES (LIBERTY)

68. ZP re-alleges paragraphs 1 through 49.

69. The Liberty Policies constitute valid and enforceable contracts.

70. The Liberty Policies require Liberty to pay on Huffman's behalf those sums that Huffman becomes legally obligated to pay as damages because of "property damage" occurring during the policy period and caused by an "occurrence" as those terms are defined by the Liberty Policies.

71. The amounts awarded to ZP in the Verdict and resulting Judgment in the Underlying Lawsuit (including if/as modified to include pre-judgment interest and/or attorneys' fees) constitute sums for which Huffman is legally obligated to pay as damages because "property damage" caused by an "occurrence," both of which occurred during the policy period(s) of the Liberty Policies.

72. No exclusions, including those identified in **Exhibits F-I**, apply under the circumstances to relieve Liberty of its obligations to pay the amount of the Judgment to ZP on Huffman's behalf.

73. Liberty and ZP disagree as to the scope and extent of coverage available for the Judgment, including to the extent amended to include pre-judgment interest and attorneys' fees and costs.

74. Accordingly, an actual and justiciable controversy exists among the parties concerning the scope of Liberty's obligations under the Liberty Policies as to which a declaratory judgment setting forth their respective rights and obligations under the Liberty Policies in relation to the Judgment in the Underlying Lawsuits is necessary and appropriate.

**WHEREFORE**, ZP respectfully requests entry of judgment declaring the rights and interests of the parties in the issues and for the reasons described above, and if necessary to provide full relief, awarding damages to ZP to the extent of the amount of the Judgment and the full amount of its attorneys' fees and costs incurred to defend the Travelers' Counterclaim covered by the Liberty Policies, interest on such sums as provided by law, legal fees and costs incurred in this action to the full extent allowed by law, including but not limited to under Arkansas Code Sections 16-22-308, 23-79-208, and/or 23-79-209, and such other and further relief as may be equitable, just, and proper.

### COUNT IV – DECLARATORY RELIEF AND DAMAGES (ASPEN)

75. ZP re-alleges paragraphs 1 through 49.

76. The Aspen Policies constitute valid and enforceable contracts.

77. The Aspen Policies require Aspen to pay on Huffman's behalf "loss" in excess of the applicable limits of the Liberty Policy(ies), including those sums that Huffman becomes legally

obligated to pay as damages because of "property damage" occurring during the policy period and caused by an "occurrence" as those terms are defined by the Aspen Policies.

78.  The amounts awarded to ZP in the Verdict and resulting Judgment in the Underlying Lawsuit (including if/as modified to include pre-judgment interest and/or attorneys' fees) in excess of the limits of the applicable Liberty Policy(ies) constitute "loss" because they are sums for which Huffman is legally obligated to pay as damages because "property damage" caused by an "occurrence," both of which occurred during the policy period(s) of the Aspen Policies.

79.  No exclusions, including those identified in **Exhibits J-M**, apply under the circumstances to relieve Aspen of its obligations to pay the amount of the Judgment to ZP on Huffman's behalf.

80.  Liberty and ZP disagree as to the scope and extent of coverage available for the Judgment, including to the extent amended to include pre-judgment interest and attorneys' fees and costs.

81.  Accordingly, an actual and justiciable controversy exists among the parties concerning the scope of Aspen's obligations under the Aspen Policies as to which a declaratory judgment setting forth their respective rights and obligations under the Aspen Policies in relation to the Judgment in the Underlying Lawsuits is necessary and appropriate.

**WHEREFORE**, ZP respectfully requests entry of judgment declaring the rights and interests of the parties in the issues and for the reasons described above, and if necessary to provide full relief, awarding damages to ZP to the extent of the amount of the Judgment covered by the Aspen Policies, interest on such sums as provided by law, legal fees and costs incurred in this action to the full extent allowed by law, including but not limited to under Arkansas Code Sections 16-22-308, 23-79-208, and/or 23-79-209, and such other and further relief as may be equitable,

just, and proper.

## TRIAL BY JURY

ZP demands a trial by jury of all issues so triable as a matter of right.

Dated: February 6, 2026.                                     Respectfully submitted,

**LAX, VAUGHAN, FORTSON, ROWE & THREET, P.A.**

_____
Grant E. Fortson
AR Bar No. 92148
gfortson@laxvaughan.com
11300 Cantrell Road, Suite 201
Little Rock, AR 72212
Telephone 501-376-6565
Facsimile: 501-376-6666

**REED SMITH LLP**

R. Hugh Lumpkin
(*Pro Hac Vice* application forthcoming)
hlumpkin@reedsmith.com
Matthew B. Weaver
(*Pro Hac Vice* application forthcoming)
mweaver@reedsmith.com
Christopher T. Kuleba
(*Pro Hac Vice* application forthcoming)
ckuleba@reedsmith.com
200 S Biscayne Blvd., Suite 2600
Miami, FL 33131
Telephone: 786-747-0200
Facsimile: 786-747-0299